People vs. Mosley, is that your counsel? Go ahead. Go ahead, counsel. Thank you, Your Honor. May it please the Court, I'm Robert Burke with the Office of the State Appellant Defender. I represent the defendant appellant, Michael Mosley. We're asking this Court to remand this case for a crankle hearing. A very short hearing about strategy. Mr. Mosley was convicted of shoplifting some Mogan David wine from a convenience store in downtown Belleville. The Mogan David wine, along with some malt liquor that had not been paid for, was found in his girlfriend's diaper bag. Her name was Jennifer Livingston. Before the first trial, Ms. Livingston wrote a letter admitting guilt as to who sold the Mogan David, who sold the malt liquor. She was not charged. She had a young baby. Then he was found guilty. The case came up on appeal. There was a problem with the jury instructions. It was remanded for a new trial. Before the second trial, the statute of limitations ran on any felony from stealing malt liquor or Mogan David wine from the convenience store. Before the first trial, there would have been a reason to not call Ms. Livingston. Now, you've admitted stealing this wine. Before the second trial, that reason was gone. Before the first trial, she would have said, I'm not going to testify. I'm in jeopardy. But at the second trial, she could not have said that. There was no good reason to not call her as a witness. Mr. Mosley complained about this before the trial and complained about it twice after the trial in written letters. At sentencing, however, the court, not Judge Baricevic. Judge Baricevic is very good about these things. But Judge Cook did not inquire, what's your beef? Why are you having a problem here? What's going on? Mr. Leifer, and I know Andy Leifer. Like him, I think he's a great attorney. But he never said, Mr. Leifer, he's got a complaint here. Why didn't you call her as a witness? That's a crankle hearing. Because there was never a crankle hearing. That's why we're asking this case be remanded for the inquiry. Why didn't you call the person who admitted the crime as a witness? Thank you, Your Honor. May I please report? Counsel. Jennifer Hanlon on behalf of the people. In asking the court to assess the wisdom of the defense counsel's trial strategy, the defendant is assuming that the trial court had a duty to consider the pre-trial and mid-trial letters that were filed by the defendant, by the defendant pro se. However, no such duty existed under the Illinois Supreme Court's decision in People v. JACA. Is there a difference between a duty to consider those letters and a duty to inquire as to defense strategy or lack of it as to the subject of those letters? I don't think so, Your Honor. JACA reversed an appellate court's decision that extended this duty to, I believe, consider the letters that were filed pre-trial that alleged ineffective assistance, but stated that there was nothing to prevent a court from considering the claims. The defendant's claim is that the circuit court had a duty sua sponte to reconsider the letters that were filed before and during trial and to essentially re-construe them as post-trial letters that then would trigger those duties that exist under Moore. But as I say, the Illinois Supreme Court in JACA rejected that assertion, and that's confirmed by the appellate court's decision in Washington, which is cited in the People's Brief, stating that JACA created a bright-line test for when these duties were triggered under Moore, that these are post-trial claims that only post-trial claims trigger that duty. The defendant is also asking this court to assume that the court not only had a duty to consider the letter, but that if it had done so, the court would have assessed the wisdom of that trial strategy. And again, this also is contrary to Moore, which states that where a court considers a post-trial claim, it need not conduct even a preliminary hearing if the claim of ineffective assistance to counsel either lacks merit or pertains only to matters of trial strategy. So the preliminary question isn't whether the trial strategy was valid or whether the court agreed with it, but simply whether it pertained to matters of trial strategy. So the validity of the trial strategy at that stage, when deciding whether to conduct even a preliminary hearing, is immaterial. We only get to the validity of strategy by ignoring Moore. The defendant's proposed exception, which would require a court to consider the validity of the trial strategy at that stage, would swallow the rule that states that under Moore, the preliminary hearing need not be conducted if the claim pertains only to matters of trial strategy. And furthermore, even if validity of the trial strategy may be examined, and remember, there's no duty under JACO even to consider these letters, the circuit court and this court are required to presume that the defense counsel's trial strategy was valid. And in fact, the record discloses reasons why it was a sound strategy not to call Livingston. Her testimony could have been impeached by her prior inconsistent statement to police, by her economic reliance on the defendant, by the prior instance of domestic battery, by the defendant against Livingston, which the state was ready to produce in the event that Livingston did testify. And as the judge noted on November 1st, when considering the defendant's mid-trial letter, her testimony would not necessarily have been exonerating of the defendant, given that he still could have been convicted on an accountability theory. So instead, the defense counsel pursued a strategy of arguing, in closing argument, that Livingston was the guilty party without presenting her testimony. And under these circumstances, that was reasonable. Now, the defendant in reply speculates, and here today speculates, that defense counsel made a considered decision not to call her at the first trial, call her as a witness at the first trial, because he believed that she would have been in jeopardy herself at that point of being prosecuted for this crime. However, of course, this is pure speculation. Nothing about this appears anywhere in the record. It also ignores the fact that she was on the witness list at the first trial. He told the jury that she might testify. She was on the witness list. So if counsel had made this considered decision, then he wouldn't have put her on the witness list at the first trial. And finally, the speculation also ignores other forms of jeopardy. As long as we're speculating, let's speculate about a possible civil liability, a possible petition to revoke probation, which we know from her letter that she was on at the time of the theft. And this also could have been used in DCFS proceedings, which we know from the record were pending against her at certain points during the events in question. So because the court did not have a duty to consider these letters, it instead had under Jaco just nothing to prevent the court from considering the claim. And as argued in the People's Answer Brief, the court did not abuse whatever discretion it had in not sui sponte reconsidering this claim. After all, how can the judge abuse his discretion by not sui sponte reconsidering a claim that he knows that he could deny based solely on his own knowledge of the case, which under Moore he could have. If there are no questions, I'll ask that this court affirm. Thank you, counsel. Counsel? Counsel, there was evidence, I believe, at least I read in the brief, that the defendant was seen taking a bottle of this bottle and hiding it in his clothing. Now, had a crime been committed at that point? If that's true, assume it's true. Assume that's true, yes. So then even though it was found in the diaper bag where it was, if the jury believed there was a crime committed at that point, why would it be necessary to go any further? If that's believed. The witness who said that said that he watched the defendant hide it and did not see him put it in the diaper bag. Right, but I mean it's already committed. Has there been a crime committed when he sticks it in his trousers? If that's the case. And that's what he testified to. Could the jury believe it? Yes, Your Honor. And at that point, was his case over? No, Your Honor, because the other state witness, the clerk at the front of the store, said that he did not see anything. Because it was in his clothing. Yes, he did not see anything in his clothing. Well, I didn't think that was the evidence. Because you don't go through somebody's clothing when they check out. Yes, but he did not see anything inside Mr. Moses' pants. It's a bottle of wine. I saw him turn around, go back, come back up, still did not see anything in his clothing. And that's the problem here, Your Honor. The state had two witnesses. One of them said, I saw him put it in there. The other said, I didn't see it in there. Well, when he put it in there, was part of it exposed? Was part of the bottle? Yes. I don't believe he put it in there, Your Honor. Well, there was evidence, testimony that he did put it in his pants. Pardon me? There was evidence, testimony, could be believed by the jury, that they saw him put it in his pants. Yes. Now, does everybody in the store have to see that, or is that enough? If this were a reasonable doubt case, Your Honor, that's enough. This is not a reasonable doubt case. That's why this litigation becomes so important. One store clerk says, I saw him put it in his pants. The other store clerk says, I didn't see it in his pants. Well, they weren't in the same place. She was at the cash register, and the other guy was behind the cooler. And she said that he did not walk funny when he turned around. Well, did the guy behind the cooler say he walked funny? He was looking out to the guys. In the count, I don't believe it was asked. But the point being, Mr. Leifer said, and this was mentioned, Mr. Leifer said in his argument, I'm going to prove that she did it. And in his closing, he's still talking about she did it. There's competing store clerks. Her testimony would have been valuable. If there was a strategy to not call her, I would like to hear what it is because I can't think of one. The fact that she could have been impeached, so what? Now, was there evidence? Sure there was evidence. But then there was evidence that he didn't do it. The question is, why wasn't she called the witness? That's when you don't believe the one person that said saw him do it. I think it was conflicting evidence. One person said this and one person said that. They were both state witnesses. They were both there that day. They both worked for the store. One said one and one said the other. Aren't we talking about apples and oranges? Because hiding something in your clothing would mean that maybe the second person couldn't see it because it was hidden in his clothing. Perhaps that's the case, Your Honor.  There's some doubt there. The jury could believe in a conviction. The jury can believe that they saw him hide it in his clothing. And the jury can believe that it wasn't in his clothing. No, but they did apparently. That's correct, and I'm not arguing reasonable doubt, Your Honor. I'm arguing that Ms. Livingston should have been called as a witness. We don't know why she wasn't. It would have been a very simple post-trial to say, Mr. Liefrem, why didn't you call her as a witness? You said that you wanted to prove that she took it. I didn't want to prove she took it. I was saying did not they prove that he took it if the jury tended to believe it? Well, what would the jury have believed if they'd heard her testimony? I don't know what they'd believe. That's why we need a hearing. I don't know what her testimony would be. She'd probably say she took it because she can't be prosecuted. Well, certainly, she was off probation by the time of the second trial. Her letter says she was on probation for two and a half years. Was the statute of limitations run on the felony? Three. Did it run? Yes. So nothing could happen to her? That's correct. So she'd say she did it? She certainly said it before the first trial, and it found him in her diaper bag.  No, that was not testimony. That's why there shouldn't have been. Your Honor, we're asking for a very simple hearing, a frank hearing. Thank you. Thank you, counsel. How are you doing? You've got more time if you want it.